**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**VICKY K.,**

                                                    **Plaintiff,**

               **vs.**                                              **6:19-CV-519**
                                                                    **(MAD)**

**ANDREW SAUL,** *Commissioner of*
*Social Security,*[1]

                                                    **Defendant.**

---

**APPEARANCES:**                          **OF COUNSEL:**

**OFFICE OF PETER M. HOBAICA, LLC**       **B. BROOKS BENSON, ESQ.**
2045 Genesee Street
Utica, New York 13501
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**        **ANDREEA L. LECHLEITNER, ESQ.**
**OFFICE OF REGIONAL GENERAL**
**COUNSEL REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff, Vicky K., commenced this action on April 30, 2019, pursuant to 42 U.S.C. §§

405(g) and 1383(c), seeking review of a decision by the Commissioner of Social Security denying

Plaintiff's application for Social Security Disability Insurance ("SSDI"). *See* Dkt. No. 1. On

---

[1] Andrew Saul was sworn in as Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action.

February 9, 2016, Plaintiff filed an application for disability insurance benefits, alleging an onset date of February 7, 2016.  *See* Administrative Transcript ("Tr.") at 180.  Plaintiff's application was denied and she filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  *See id.* at 93, 101.  A hearing was held before ALJ Charles Woode on April 17, 2018.  *See id.* at 35-80.  On June 6, 2018, the ALJ issued a decision denying Plaintiff's application.  *See id.* at 10-22.  Plaintiff subsequently requested review by the Appeals Council and was denied such review.  *See id.* at 1, 178.  Presently before the Court are the parties' cross-motions for judgment on the pleadings.  *See* Dkt. Nos. 12, 13.

## II. BACKGROUND

At the time of her application, Plaintiff was forty-six years old.  *See* Tr. at 180.  Plaintiff has a high school diploma and previously worked as a cook and waitress at various restaurants.  *See id.* at 210.  The record indicates that Plaintiff suffers from a variety of conditions including cervical degenerative joint disease status-post fusion, lumbar degenerative disc disease, urinary frequency, obesity, depression, and anxiety.  *See id.* at 12.  The record evidence in this case is undisputed and the Court adopts the parties' factual recitations.  *See* Dkt. No. 12 at 5-17; Dkt. No. 13 at 3 ("The Commissioner adopts the summary of the procedural history and statement of facts, set forth in plaintiff's brief. . . except for any inferences and conclusions asserted therein.  The Commissioner also adopts the summary of facts as outlined by [the ALJ]").

## III. DISCUSSION

### A.    Standard of Review

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  There is a five-step analysis for evaluating

disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is
> not working, (2) that he has a 'severe impairment,' (3) that the
> impairment is not one [listed in Appendix 1 of the regulations] that
> conclusively requires a determination of disability, and (4) that the
> claimant is not capable of continuing in his prior type of work, the
> Commissioner must find him disabled if (5) there is not another
> type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311

F.3d 468, 472 (2d Cir. 2002)) (other citation omitted).  "The claimant bears the burden of proof on

the first four steps, while the Social Security Administration bears the burden on the last step." *Id.*

(citation omitted).

In reviewing a final decision by the Commissioner under Title 42, United States Code

Section 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C.

§§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Court must examine the Administrative Transcript to ascertain whether the

correct legal standards were applied, and whether the decision is supported by substantial

evidence.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496,

501 (2d Cir. 1998).  "Substantial evidence" is evidence that amounts to "more than a mere

scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even

where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*,

805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

1982)) (other citations omitted).  In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a de novo

review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984)

(citation omitted).

**B.    The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since February 7, 2016, the alleged onset date.  *See* Tr. at 12.  At step

two, the ALJ concluded that Plaintiff had the following severe impairments: cervical degenerative

joint disease status-post fusion, lumbar degenerative disc disease, urinary frequency, obesity,

depression, and anxiety.  *See id.*  At step three, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that functionally equals the severity of any impairment

listed in C.F.R. Part 404, Subpart P, Appendix 1.  *See id.* at 13.  The ALJ then found that Plaintiff

> has the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) except the individual can occasionally
> balance, stoop, kneel, crouch, crawl, and climb ramps or stairs.  She
> cannot climb ladders, ropes or scaffolds.  She can frequently handle
> and finger bilaterally.  She may require the opportunity to sit for a
> minute or two after standing between 45-60 minutes.  The claimant
> should work close to restroom facilities.  She should avoid
> concentrated exposure to hazards such as commercial driving,
> unprotected heights, and dangerous machinery.  Mentally, she is
> capable of performing simple routine tasks.  She can have
> occasional or superficial interactions with co-workers, supervisors,
> and the public.

*Id.* at 16.  At step four, the ALJ found that Plaintiff had no past relevant work.  *See id.* at 20.  At

the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert.  *See*

*id.* at 20-21.  The vocational expert testified that a hypothetical individual of Plaintiff's age, with

4

her education, past relevant work experience, and RFC could perform the representative

occupations of office worker helper, housekeeper, and router/marker. *See id.* at 21. The ALJ

relied on this testimony to determine that Plaintiff is not disabled as defined by the Social Security

Act. *See id.* at 21-22.

**C.     Analysis**

     *1. Weighing the Opinion Evidence*

     The treating physician rule states that "the opinion of a claimant's treating physician as to

the nature and severity of the impairment is given 'controlling weight' so long as it 'is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d

117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). Medical opinions given by

providers who are not acceptable medical sources are not subject to the treating physician rule. 20

C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "'Acceptable medical sources' are further defined (by

regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-

language pathologists." *Genier v. Asrtue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (citing 20

C.F.R. § 416.913(a)). An occupational therapist is not considered an "acceptable medical source"

pursuant to the regulatory definition. *See Mockler v. Berryhill*, No. 2:15-CV-227, 2017 WL

1735132, *9 (D. Vt. May 3, 2017) (citing 20 C.F.R. § 416.902(a)).

     When an ALJ is considering how best to weigh the opinion of a non-acceptable medical

source and other non-treating medical opinions, the ALJ must consider a number of factors,

including: (i) the frequency of the examination and the length, nature and extent of the treatment

relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of

the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other

factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.  *See* SSR 06-03P, 2006 WL 2329939, at *4; *see also* 20 C.F.R. § 404.1527(c).  After accounting for these factors, the ALJ should generally explain the weight given to opinions from non-acceptable medical sources or at least "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  *See* SSR 06-03P, 2006 WL 2329939, at *6.

Plaintiff argues that the ALJ erroneously rejected Mr. Alessandrini's opinion that Plaintiff could not walk or stoop, and argues that this conclusion was entirely consistent with the medical evidence.  *See* Dkt. No. 12 at 24.  Plaintiff claims that remand is required to allow for proper consideration of Mr. Alessandrini's opinion as to Plaintiff's limitations.  *See id.* at 25.  Essentially, Plaintiff argues that the ALJ's finding that Plaintiff could perform light work is not supported by substantial evidence because it is not consistent with Mr. Alessandrini's opinion that Plaintiff had significant limitations in walking, lifting, and carrying.  *See id.* at 25.

The ALJ assigned very little weight to Mr. Alessandrini's opinion that Plaintiff could not walk at all, stand up for more than ten minutes, balance, stoop, kneel, crouch, or crawl.[2]  *See* Tr. at 19.  In doing so, the ALJ noted that, although Mr. Alessandrini's opinion was consistent with his observations during the examination, it was not consistent with the bulk of the record evidence. *See id.*  The ALJ found that records from examinations from around the same time period noted that Plaintiff had a normal gait and station with intact strength, sensation, and coordination.  *See id.*  The record evidence supports this finding.

---

[2] The Court notes that Mr. Alessandrini, an occupational therapist, is not considered an acceptable medical source pursuant to the applicable guidelines.  *See Mockler*, 2017 WL 1735132, at *9 (citing 20 C.F.R. § 416.902(a)).

On many occasions, Plaintiff presented with normal gate and was able to walk without difficulty. *See id.* at 306, 370, 541, 552, 556, 560. Despite Mr. Alessandrini's opinion that Plaintiff could not lift more than eight pounds frequently or fifteen pounds occasionally, Plaintiff regularly demonstrated normal motor strength and sensation. *See id.* at 541, 552, 556, 562. Further, Plaintiff reported being able to engage in a number of routine tasks which contradicts Mr. Alessandrini's opinion, such as cooking, cleaning, and shopping. *See id.* Accordingly, the Court finds that the ALJ properly weighed Mr. Alessandrini's opinion, as a non-acceptable medical source, and the consistency of his opinion with the record as a whole. Further, the Court finds that the ALJ's conclusion regarding Mr. Alessandrini's opinion is supported by substantial evidence.

Plaintiff also takes issue with the ALJ's weighing of the opinions of Dr. Tzetzo and Dr. Cole. *See* Dkt. No. 12 at 26-27. The ALJ assigned "great weight" to Dr. Tzetzo's opinion that Plaintiff was capable of handling work involving brief and superficial contact with supervisors, coworkers, and the public. *See* Tr. at 19. Plaintiff claims that this assessment is in error because Dr. Tzetzo did not review records of Plaintiff's psychiatric symptoms following her neck surgery in 2016. *See id.* In weighing Dr. Tzetzo's opinion, the ALJ noted that Dr. Tzetzo was a non-treating, non-examining medical source, but found that his opinion was consistent and supported by the record evidence. *See id.*

In forming his opinion, Dr. Tzetzo relied upon the examination of Dr. Katie Lewis. *See id.* at 86-87. Dr. Lewis found that Plaintiff had moderate limitations in relating with others and dealing with stress, and mild limitations in maintaining attention and concentration, making appropriate decisions, and learning and carrying out complex tasks. *See id.* at 313-14. Dr. Lewis noted that Plaintiff's limitations are primarily the result of her depression and anxiety. *See id.* at

7

314.  Plaintiff faults Dr. Tzetzo's opinion, arguing that it inadequately considers the symptoms she experienced after Dr. Tzeto's evaluation.  *See* Dkt. No. 12 at 26-27.  However, the symptoms which Plaintiff lists – her depression, nervousness, and anxiety – were all considered by both Dr. Lewis and Dr. Tzetzo.  *See* Tr. at 86-87, 313-14.  Plaintiff does not suggest, nor does the record indicate, that she suffered from other symptoms or that her symptoms worsened substantially.  Thus, the ALJ's reliance upon Dr. Tzetzo's opinion was not improper simply because other treatment notes became available since those notes did not materially alter the evidence reviewed by Dr. Tzetzo.  *See Camille v. Colvin*, 652 Fed. Appx. 25, 28 n.4 (2d Cir. 2016).  Accordingly, the Court finds that the ALJ properly considered the weight given to Dr. Tzetzo's opinion and that his conclusion is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ erroneously assigned "great weight" to the opinion of consultative examiner Dr. Cole.  *See* Dkt. No. 12 at 27.  The ALJ assigned great weight to Dr. Cole's opinion that Plaintiff had a moderate restriction in squatting, kneeling, heavy lifting, and carrying.  *See* Tr. at 19.  However, Plaintiff notes that Dr. Cole's examination was conducted two years before the ALJ issued his decision.  *See* Dkt. No. 12 at 27.  Plaintiff argues that the ALJ should have not have assigned great weight to Dr. Cole's opinion without reaching out to Plaintiff's other doctors to request more information about Plaintiff's symptoms in the two years after Dr. Cole's examination.  *See id.*

If, after examining the evidence, the ALJ is unable to reach a conclusion, the ALJ "will determine the best way to resolve the inconsistency or insufficiency.  The action(s) [ ] take[n] will depend on the nature of the inconsistency or insufficiency."  20 C.F.R. § 404.1520b(b)(2).  The record is insufficient "when it does not contain all of the information [ ] need[ed] to make [a] determination or decision."  20 C.F.R. § 404.1520b(b).  However, "if all of the evidence [the ALJ]

receive[s], including all medical opinion(s), is consistent and there is sufficient evidence for [the ALJ] to determine whether [the claimant is] disabled, [the ALJ] will make [a] determination or decision based on that evidence." 20 C.F.R. § 404.1520b(a).

In assigning Dr. Cole's opinion "great weight," the ALJ noted its consistency with the examination conducted and the other record evidence. *See* Tr. at 19. Plaintiff does not contend that Dr. Cole's opinion is incorrect, rather she argues that because the examination was conducted more than two years before the ALJ's decision, the ALJ should have sought more recent information about her symptoms. *See* Dkt. No. 12 at 27. Specifically, Plaintiff argues that during those two years, she experienced worsening fibromyalgia symptoms including problems walking, increased numbness and tingling in her extremities, and problems with balance. *See id.* However, the ALJ was able to reach a conclusion as to disability based on the evidence provided, which included information about Plaintiff's fibromyalgia symptoms. *See* Tr. at 29.

In Dr. Cole's opinion, he noted Plaintiff's pain associated with her fibromyalgia. *See id.* at 305. Additionally, his opinion, which was limited to Plaintiff's limitations for squatting, kneeling, heavy lifting, and carrying, was consistent with the record evidence. These same limitations were noted in other medical opinions. *See id.* at 565-56 (noting Plaintiff's limitations for lifting, carrying, crouching, stooping and kneeling). The record also contained sufficient information for the ALJ to reach a conclusion regarding Plaintiff's fibromyaglia symptoms after Dr. Cole's examination. For example, during an examination in February 2018, Plaintiff reported nonspecific paresthesia, but denied weakness and balance issues. *See id.* at 539. Additionally, the ALJ considered Plaintiff's testimony about the numbness and tingling in her extremities and her ability to walk and sit for extended periods of time. *See id.* at 16.

Because the ALJ was able to make a determination as to disability based on the extensive record before him, there was no need to contact Plaintiff's doctors to obtain additional information. *See* 20 C.F.R. § 404.1520b(a). Further, it is clear that the ALJ appropriately considered the level of support for Dr. Cole's opinion, the consultative nature of the examination, and the consistency of that opinion with the record as a whole. *See id*. at 641-42; 20 C.F.R. §§ 404.1527(c)(3)-(4). Accordingly, the Court finds that the ALJ properly considered the weight of the medical opinions in relation to the record evidence and sufficiently explained the basis for his conclusions as to Dr. Cole's opinion.

### 2. The ALJ's Impairment Finding

A plaintiff will be found disabled if the individual has an impairment, or combination of impairments, that meets or equals one of the Listings and meets the duration requirement. 20 C.F.R. § 416.920(d). The burden is on the plaintiff to present medical findings that his or her impairment meets or equals a Listing. *See Davis v. Astrue*, No. 09-CV-0186, 2010 WL 2545961, *3 (N.D.N.Y. June 3, 2010). A plaintiff must show that his or her impairment meets or equals all of the specified medical criteria of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), *superceded by statute on other grounds*. If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id.*

Plaintiff argues that the ALJ erroneously found that Plaintiff's fibromyaglia did not qualify as a "severe impairment." *See* Dkt. No. 12 at 18. Specifically, Plaintiff argues that the ALJ should have requested a "clarifying statement" from Plaintiff's providers to determine whether the symptoms she exhibited were due to her fibromyalgia or her other conditions. *See id.* Plaintiff again argues that the ALJ had a duty to develop the record in this respect. *See id.* at 21. Second, Plaintiff claims that the ALJ failed to analyze her symptoms under Section II (B) of Social

Security Ruling ("SSR") 12-2(p) and that a proper analysis would reveal that Plaintiff clearly

exhibited at least six signs, symptoms, or co-occurring conditions associated with fibromyalgia.

*See id.* at 18.  Plaintiff claims the ALJ erred in concluding that Plaintiff did not establish that

evidence of other disorders were excluded, as is required by Section II(B).  *See id.* at 19.

SSR 12-2(p) states, in relevant part, that a claimant may be found to have a medically

determinable impairment of fibromyalgia if she has all of the following:

> 1. A history of widespread pain . . . that has persisted (or that
> persisted) for at least [three] months.
> . . .
> 2. At least [eleven] positive tender points on physical
> examination[.]
> . . .
> 3. Evidence that other disorders that could cause the symptoms or
> signs were excluded.  Other physical and mental disorders may have
> symptoms or signs that are the same or similar to those resulting
> from [fibromyalgia].  Therefore, it is common in cases involving
> [fibromalgia] to find evidence of examinations and testing that rule
> out other disorders that could account for the person's symptoms
> and signs.

SSR 12-2(p), 2012 WL 3104869, *2-3.

The ALJ, in finding that Plaintiff's fibromyalgia did not qualify as a medically

determinable impairment, first noted that for fibromyalgia to qualify under SSR 12-2p, Plaintiff

needed to provide "evidence from an acceptable medical source whose fibromyalgia diagnosis is

based on both the claimant's medical history and a physical exam of the claimant."  *See id.* at 12;

*see also* SSR 12-2p, 2012 WL 3104869, at *2.  As the ALJ correctly noted, there is no such

evidence.  In fact, Plaintiff's medical records indicate that she never received a formal

examination for fibromyalgia.  *See id.* at 378.  Accordingly, the Court finds that the ALJ correctly

found that Plaintiff failed to provide the evidence necessary to establish that her fibromyalgia

constituted a medically determinable impairment.

11

Alternatively, the ALJ also correctly noted that there was insufficient evidence that Plaintiff's other conditions were excluded as the source of her symptoms, as is required by SRR 12-2p. *See id.* at 11. Plaintiff does not point to, nor does the Court find, any such evidence. Plaintiff's response to this lack of evidence is to argue that the ALJ, as part of his duty to develop the record, should have reached out to her providers to determine which symptoms were associated with her fibromyaglia and which were associated with her other conditions. *See* Dkt. No. 12 at 19-21. However, it is Plaintiff's burden to establish the criteria under SSR 12-2p. *Woodmancy v. Colvin*, 577 Fed. Appx. 72, 74 (2d Cir. 2014). Plaintiff's failure to provide the evidence necessary to meet the criteria for fibromyalgia does not implicate the ALJ's duty to develop the record because the record contained ample information to determine disability. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (holding that the duty fo develop the record is not implicated where the record contains sufficient evidence to determine disability). Because Plaintiff did not provide evidence that her other conditions were excluded as sources of her symptoms, she cannot meet the requirements of SSR 12-2p, regardless of her compliance with the other requirements.

### 3. Combined Impact of Plaintiff's Impairments

Plaintiff alleges that the ALJ failed to consider Plaintiff's fibromyalgia symptoms in conjunction with her other impairments. *See* Dkt. No. 12 at 23. This argument is without merit. The Court is not entitled to reject the ALJ's determination where there is evidence to support either position. *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012). The findings of the ALJ are "conclusive unless they are not supported by substantial evidence." *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). "Substantial evidence means more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

Despite the fact that Plaintiff had failed to establish that her fibromyalgia was a medically determinable impairment, the ALJ explicitly considered the symptoms she attributed to her fibromyalgia: her limitations in balance, lifting, kneeling, and standing.  *See* Tr. at 16.  Further, the ALJ considered her subjective complaints of tingling and numbness in her extremities and diffuse pain.  *See id.*  Additionally, the ALJ explicitly noted Plaintiff's other limitations and explained that the interaction between her medically determinable disabilities and her fibromyalgia symptoms was taken into account when considering the question of impairment.  *See id.* at 13.  Ultimately, after considering all of the relevant physical and mental impairment listings, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  *See id.* at 13.  Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

### 4. Assessment of Plaintiff's Credibility

"While the ALJ is required to take into account a claimant's reports of pain, symptoms, and other indicia of impairment, she is not required to accept those reports 'without question.'" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); 20 C.F.R. § 416.929(a).  Instead, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Id.* (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)).  The ALJ's credibility findings receive "special deference" because of his ability to observe the claimant's testimony.  *See Yellow Freight Sys., Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).  Like

other findings of the ALJ, the credibility finding is reviewed for whether it is supported by substantial evidence. *See Hopkins v. Colvin*, No. 13–CV–4803, 2014 WL 4392209, *5 (S.D.N.Y. Sept. 5, 2014); *Torres v. Colvin*, No. 12–CV–6527, 2014 WL 241061, *12 (S.D.N.Y. Jan. 22, 2014).

The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and other limitations, and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant. *See Marcus*, 615 F.2d at 27. The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Genier*, 606 F.3d at 49 (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vi). The issue is

not whether the clinical and objective findings are consistent with an inability to perform all

substantial activity, but whether the plaintiff's statements about the intensity, persistence, or

functionally limiting effects of his symptoms are consistent with the objective medical and other

evidence.  *See* Social Security Ruling ("SSR") 96-7p, Policy Interpretation Ruling Titles II and

XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's

Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. July 2, 1996).  One strong indication of

credibility of an individual's statements is their consistency, both internally and with other

information in the record.  *Id.* at *5.

      "After considering plaintiff's subjective testimony, the objective medical evidence, and any

other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony."

*Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§

404.1529(c)(4), 416.929(c)(4)).  An ALJ rejecting subjective testimony "'must do so explicitly and

with sufficient specificity to enable the Court to decide whether there are legitimate reasons for

the ALJ's disbelief and whether his decision is supported by substantial evidence.'"  *Melchior v.*

*Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604,

608 (S.D.N.Y. 1987)).  The Commissioner may discount a plaintiff's testimony to the extent that it

is inconsistent with medical evidence, the lack of medical treatment, and her own activities during

the relevant period.  *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891, *10

(E.D.N.Y. June 27, 2007).  With regard to the sufficiency of credibility determinations, the

Commissioner has stated that

> it is not sufficient for the adjudicator to make a single, conclusory
> statement that "the individual's allegations have been considered" or
> that "the allegations are (or are not) credible."  It is also not enough
> for the adjudicator simply to recite the factors that are described in
> the regulations for evaluating symptoms.  The determination or

> decision must contain specific reasons for the finding on credibility,
> supported by the evidence in the case record, and must be
> sufficiently specific to make clear to the individual and to any
> subsequent reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

Plaintiff argues that the ALJ improperly discounted her testimony and failed to sufficiently

detail his justification for his credibility determination. *See* Dkt. No. 12 at 27-28. Plaintiff claims

that the ALJ disregarded significant portions of her testimony and did not describe why her

testimony was inconsistent with the medical evidence. *See id.* at 28.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

be expected to cause the alleged symptoms. *See* Tr. at 16. However, the ALJ found that

Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms

were not entirely consistent with the medical and record evidence. *See id.* The ALJ noted that

while Plaintiff testified that she could only sit for fifteen minutes, she was able to sit through an

hour-long proceeding without needing to change positions. *See id.* Plaintiff testified to weakness

and numbing in her extremities. *See id.* at 40-41, 50-51. However, on many occasions, Plaintiff

presented with normal gate and was able to walk without difficulty. *See id.* at 306, 370, 541, 552,

556, 560. Plaintiff often demonstrated normal motor strength and sensation, despite her claims of

weakness in her extremities. *See id.* at 541, 552, 556, 562. Although Plaintiff claimed to have

vertigo and balance issues, Plaintiff denied balance issues to health care providers. *See id.* at 539.

Finally, Plaintiff testified that she has trouble with memory, concentration, and sustaining focus.

*See id.* at 51. However, an examination found that her memory was only mildly impaired, and

that she had no limitations in maintaining attention and concentration. *See id.* at 313-14.

Accordingly, the Court finds that the ALJ properly evaluated Plaintiff's credibility and that his determination is supported by substantial evidence.

### 5. Residual Functional Capacity

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).  An RFC determination is informed by consideration of a claimant's physical and mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *See id.*; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

When addressing a plaintiff's RFC, an ALJ is required to note how "the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and non-medical evidence (*e.g.*, daily activities, observations)."  SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998).  Additionally,

> [t]he RFC assessment must first identify the individual's functional
> limitations or restrictions and assess his or her work-related abilities
> on a function-by-function basis, including the functions in
> paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945.
> Only after that may RFC be expressed in terms of the exertional
> levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96–8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004).  An ALJ's failure to explain the evidence he or she relied upon in assessing RFC constitutes a ground for a remand.  *See Compo v. Commissioner of Soc. Sec.*, No. 6:05–CV–973, 2009 WL 2226496, *9 (N.D.N.Y. July 23, 2009) (citation omitted); *see also Hodge v. Astrue*, No. 07–CV–0162, 2009 WL 1940051, *10 (N.D.N.Y. July 7, 2009) (citation omitted).

To properly ascertain a claimant's RFC, an ALJ must assess the claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull. *See* 20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a. Nonexertional limitations or impairments, including impairments resulting in postural and manipulative limitations, must also be considered. *See* 20 C.F.R. §§ 404.1545(b), 404.1569(a); *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *See Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1998)). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the corresponding regulations. *See Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Plaintiff essentially argues that, because of all of the reasons addressed above, the ALJ's RFC hypothetical to the vocational expert was flawed. *See* Dkt. No. 12 at 29. Specifically, Plaintiff claims that the ALJ's hypothetical did not incorporate Mr. Alessandrini's opinions regarding Plaintiff's limitations and Plaintiff's severe impairment, *i.e.*, fibromyalgia. *See id.* However, for the reasons the Court has already explained, the conclusions upon which the ALJ based his hypothetical RFC question to the vocational expert were supported by substantial evidence.

Additionally, a review of the ALJ's decision makes clear that his RFC determination included consideration of all of Plaintiff's limitations. The ALJ concluded that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. She cannot climb ladders, ropes or scaffolds. She can frequently handle and finger bilaterally. She may require the opportunity to sit for a minute or two after standing between 45-60 minutes. The claimant should work close to restroom facilities. She should avoid concentrated exposure to hazards such as commercial driving, unprotected heights, and dangerous machinery. Mentally, she is capable of performing simple routine tasks. She can have occasional or superficial interactions with co-workers, supervisors, and the public.

*Id.* at 16.

This RFC demonstrates the ALJ's contemplation of Plaintiff's physical and mental abilities. The ALJ considered the record evidence and the available medical opinions in determining Plaintiff's ability to perform the physical and mental demands of work activity, and sufficiently described his findings. *See id.* at 13-20; 20 C.F.R. § 404.1545(c). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the decision denying benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 24, 2020
        Albany, New York

Mae A. D'Agostino
U.S. District Judge